Jasen, J.
(dissenting). The theory advanced by the majority,
that a not-for-profit corporation lacks authority to amend its corporate charter to change its corporate purpose, eviscerates the policy of the Not-For-Profit Corporation Law according charitable organizations broad latitude in corporate self-governance.
The facts are not substantially in dispute. Joseph Palmer Knapp established The Knapp Foundation (Foundation) in 1923 by act of the Legislature (L 1923, ch 21) as a membership corporation to provide assistance, in its trustees’ absolute discretion, to employees of companies owned or controlled by Mr. Knapp. The Foundation’s corporate charter was amended in 1927 by act of the Legislature (L 1927, ch 607), and again in 1983. During the years subsequent to its establishment, the number and amounts of loans sought from the Foundation declined as public assistance became more readily available. Since 1978, only one request for assistance was submitted by an individual to the Foundation, and the request was denied.
Pursuant to Not-For-Profit Corporation Law (N-PCL) article 8, on January 10,1983, the Foundation executed a certificate of amendment of the certificate of incorporation of The Knapp *472 Foundation, which added the following sentence to the corporate charter: “Notwithstanding the foregoing provisions of this Section 1, the trustees, in their absolute discretion, are authorized and empowered to apply the principal and income of The Knapp Foundation, including any part or all of said principal and income, to any other charitable organization founded by or in the memory of Joseph Palmer Knapp, including without limiting the generality of the foregoing, The Knapp Foundation, Inc., a North Carolina corporation, and an exempt organization described in Section 501 (c) (3) of the Internal Revenue Code of 1954, as amended.”
On January 24,1983, the Attorney-General noted no objection to the granting of judicial approval of the amendment, and waived required statutory notice. On February 2, 1983, Honorable Donald J. Sullivan, a Justice of Supreme Court, approved the amendment and consented that it be filed. Relying upon the authority granted the trustees of the Foundation by the amendment of the certificate of incorporation, as approved by a Justice of the Supreme Court, on February 28,1983, the trustees transferred $700,000 of its total assets of $946,687 to Knapp, N.C., a North Carolina charitable corporation founded by Mr. Knapp.
Thereafter, plaintiffs, two employees of a successor corporation of a Knapp corporation and said successor corporation, instituted this action by an order to show cause dated March 9, 1983, in which they moved for an order enjoining the transfer of assets by the Foundation during the pendency of the action. Supreme Court, New York County, dismissed the complaint, and the Appellate Division, First Department, unanimously affirmed, without opinion.
At the outset, it is important to consider the background of the N-PCL in New York. The N-PCL in general, and article 8 in particular, were intended to resemble corresponding provisions under the Business Corporation Law (see, Explanatory Memoranda preceding the N-PCL, McKinney’s Cons Laws of NY, Book 37, p XX). Indeed, the N-PCL was designed to parallel the New York Business Corporation Law “as closely as the subject matter permitted”. (Henn, Statutory Trends in the Law of Nonprofit Organizations: California, Here We Come!, 66 Cornell L Rev 1103, 1114.) The N-PCL, like the Business Corporation Law, manifests an emphasis upon “enabling”, rather than “regulating” corporate affairs. (See, Fuld, New York’s New Business Corporation Law, 19 NYCLA B Bull 52.) As will be demonstrated, the majority’s approach fosters a paternalistic approach toward not-for-profit corporations which is wholly incongruous *473 with clear statutory authority dictating broad latitude in corporate self-governance.
To discern the scope of a not-for-profit corporation’s power to amend its charter under N-PCL article 8, it is necessary to review the power of a charitable corporation to amend its charter under the Membership Corporations Law (repealed L 1969, ch 1066, eff 1970) upon which the N-PCL is based. The Membership Corporations Law provided that a membership corporation created under or by a general or special law may “extend, limit or otherwise change its purposes and powers or other provisions of its certificate or act of incorporation” provided “that no corporation organized by or under special law shall change the general character of its business as authorized by such special law” (Membership Corporations Law § 30 [A]; § 30 [7] [c]). Thus, pursuant to the law which formerly governed such charitable corporations as The Knapp Foundation, the power of a membership corporation was strictly limited so as to bar an amendment of the legislative charter which would change the corporate purpose or general corporate character. This limitation upon the power of a charitable organization, however, was deleted from the N-PCL.
Not-For-Profit Corporation Law § 801 (b) (2) specifically provides that any corporation may, “without limitation * * * enlarge, limit or otherwise change its corporate purposes” (emphasis added). The N-PCL explicitly extends such power to corporations such as The Knapp Foundation by providing “[a] corporation created by special act may accomplish any or all amendments permitted in this article, in a manner and subject to the conditions provided in this article”. (N-PCL 801 [c].) The limitation upon the power of membership corporations to change its corporate purpose (Membership Corporations Law § 30) was not continued upon the adoption of the N-PCL, although article 8 of the N-PCL was expressly based upon, inter alia, Membership Corporations Law § 30. (See, Explanatory Memoranda, McKinney’s Cons'Laws of NY, Book 37, Not-For-Profit Corporation Law, art 8, p XX.) Basic rules of statutory construction declare that any material change in the language of the original act is presumed to indicate a change in legal rights. (1A Sutherland, Statutory Construction § 22.30 [4th ed]; Lamport v Smedley, 213 NY 82.) Accordingly, based upon the fact that the N-PCL accords all corporations created by special act unfettered power to change their corporate purpose, and since the broad power to amend the corporate charter established by the N-PCL is in marked contrast to the restricted powers of membership corpo *474 rations under prior law, the Foundation was legally authorized to amend its certificate of incorporation to change its corporate purpose.
We are thus presented with a clear conflict between the provision of the N-PCL granting the Foundation the power to change its corporate purpose, and the restrictive provision of the statutory corporate charter. Not-For-Profit Corporation Law § 103 (c) is designed to address and resolve such conflicts, and provides: “(c) If any provision in articles one to thirteen inclusive of this chapter conflicts with a provision of any subsequent articles or of any special act under which a corporation to which this chapter applies is formed, the provision in such subsequent article or special act prevails. A provision of any such subsequent article or special act relating to a matter referred to in articles one to thirteen inclusive and not in conflict therewith is supplemental and both shall apply. Whenever the board of a Type B corporation, formed under a special act, reasonably makes an interpretation as to whether a provision of the special act or this chapter prevails, or both apply, such interpretation shall govern unless and until a court determines otherwise, if such board has acted in good faith for a purpose which it reasonably believes to be in the best interests of the corporation, provided however, that such interpretation shall not bind any governmental body or officer.” This provision was enacted on recommendation of the Joint Legislative Committee to Study Revision of Corporation Law. (L 1972, ch 961.) The legislative history of Not-For-Profit Corporation Law § 103 (c) sets forth the intended function of the section: “The bill would amend section 103(c) to provide that if the board of directors of a corporation formed under a special act reasonably and in good faith makes an interpretation as to whether such act or this chapter prevails, such interpretation shall govern unless and until a court determines otherwise but shall not bind a governmental body or officer.” (Bill Jacket for L 1972, ch 961, p 11 — Explanatory Memorandum on An Act to Amend the Not-For-Profit Corporation Law and the Benevolent Order Law, in Relation to Certain Technical Amendments Thereof; Submitted by: Joint Legislative Committee to Study Revision of Corporation Laws.)
In the instant case, the Foundation, a Type B corporation formed under a special act, made a determination that provisions of the Not-For-Profit Corporation Law § 801 (b) (2); (c), authorizing it to change its corporate purpose by certificate amendment, prevailed over a restriction upon use of the corporation’s principal funds as contained in the special act of the *475 Legislature (L 1923, ch 21). Not-For-Profit Corporation Law § 103 (c) provides that where the corporate board reasonably makes an interpretation as to whether a provision of the special act or the Not-For-Profit Corporation Law prevails, “such interpretation shall govern unless and until a court determines otherwise, if such board has acted in good faith for a purpose which it reasonably believes to be in the best interests of the corporation” (emphasis added). Section 103 (c) recognizes that the reasonableness of the transaction is determined by the corporation’s subjective finding that its action is in the best interests of the corporation. Bearing in mind that the certificate amendment was determined to be lawful by a Justice of the Supreme Court and the Attorney-General, the principal has been dormant for a number of years while still subject to Federal taxation, and there has been no allegation of bad faith on the part of the board of directors, it can hardly be said that the Foundation acted for a purpose which, from the perspective of the board of directors, was contrary to the best interests of the corporation or otherwise unlawful. Under the circumstances, I believe it is improper to hold the Foundation’s actions unreasonable, as a matter of law, where it acted pursuant to clear statutory authority. (N-PCL 801 [b] [2]; 801 [c].)
N-PCL 522, which is primarily relied upon by the majority to invalidate the charter amendment permitting transfer of the corporate assets to a sibling corporation, does not apply to this case. The legislative history of N-PCL 522 unequivocally establishes that its so-called “quasi-cy pres” principles are wholly inapplicable to the instant case. Section 522 was enacted by Laws of 1978 (ch 690). In a report attached to the sponsor’s memorandum for chapter 690, it was stated that the proposed act “is * * * inapplicable to any interests held for private beneficiaries, even though a not-for-profit corporation may be a remainderman.” (Legislative Bill Jacket, L 1978, ch 690, Report, p 2 [emphasis added].) It was the clear intent of the draftsmen of the N-PCL that Type B corporations were not to administer interests held for private beneficiaries. (Note, New York’s Not-For-Profit Corporation Law, 47 NYU L Rev 761, 777; Internal Revenue Code [26 USC] § 501 [c] [3].) As it can hardly be denied that the individual plaintiffs are “private beneficiaries”, in contrast to those members of the general public who could be said to derive benefits from other charitable organizations, the “quasi-cy pres” principles of N-PCL 522 are inapplicable to the instant case.
Moreover, in terms of a conceptual, sequential application of N-PCL 522, 513, the first step is to identify the corporate *476 purpose. If the applicable gift instrument is consistent with the terms of the corporate purpose, no release or reformation is needed. The purpose of N-PCL 513 is to bring the administration of assets received by a not-for-profit corporation under the umbrella of corporation law, rather than trust law. (Note, New York’s Not-For-Profit Corporation Law, 47 NYU L Rev 761, 785; Explanatory Memoranda, McKinney’s Cons Laws of NY, Book 37, Not-For-Profit Corporation Law, art 5, p XXX.) The problems inherent in the application of trust principles to charitable corporations have been well documented. (Taylor, A New Chapter in the New York Law of Charitable Corporations, 25 Cornell LQ 382.) The starting point of analysis under N-PCL 513, 522 is the “purpose specified in its certificate of incorporation”, and if “the purposes specified in the gift instrument” are deemed to be inconsistent with the said corporate purpose, only then are the “quasi-cy pres” principles invoked. It is clear, from an analysis of the totality of the legislative scheme, that where, as here, donative intent is consistent with the lawfully achieved corporate purpose, resort to cy pres is unnecessary. To hold otherwise would be to remove not-for-profit corporations from under the umbrella of corporation law, and place such entities within the scope of trust law which rigidly places primary emphasis upon the terms of the gift instrument.
The anomalous results which would obtain under an analysis which deprives a not-for-profit corporation of the power to change its corporate purpose is well exemplified by an application of N-PCL 522 (c). Section 522 (c) provides that “[a] release under this section may not allow a fund to be used for purposes other than the purposes of the corporation”. Even if the Foundation utilized the “quasi-cy pres” principles of section 522 and achieved release from the limitation upon transfer of the principal recognized in the original legislative charter, the release would not enable the funds to be used for purposes other than the stated purposes of the corporation. (N-PCL 522 [c].) This result is clearly unintended by the N-PCL.[1]
Scholarly commentary supports the view that amendment of the corporate charter by the trustees of a charitable corporation, in an effort to change a corporate purpose, is a legitimate alternative to the cy pres doctrine. It has been said, “[w]hen there is a general statutory authority allowing amendment of a *477 corporate charter, the corporation and its board of trustees are the proper parties to institute the amendment process * * * [Where there exists charitable intent], and where performance on the original terms is either impractical or illegal, amendment may be merely an exercise of the power of cy pres. And even though the situation inviting change is not extreme enough to make possible a rationalization on cy pres principles, it would seem that amendment, where reasonably necessary, should be allowed though contrary to terms of a gift that may have been fixed by a donor living in a different age”. (Note, The Charitable Corporation, 64 Harv L Rev 1168, 1178-1179; see also, Scott, Education and the Dead Hand, 34 Harv L Rev 1, 17.)
Inasmuch as there exists express authority to permit a not-for-profit corporation created by statute to change its corporate purpose, the N-PCL embraces a policy against governmental interference within “reasonable” corporate practices, and application of cy pres principles to not-for-profit corporations with private beneficiaries was not contemplated by the drafters of N-PCL 522,1 would hold the Foundation has lawfully changed its corporate purpose and is free to transfer property consistent with its statutorily authorized and court-approved corporate purpose.[2]
*478 One final point deserves mention. The Attorney-General, who is accorded broad supervisory powers over the administration of not-for-profit corporations and charities, would have been a proper, if not necessary, party to the instant action. The benefit of the independent counsel of the Attorney-General, as to the applicability of N-PCL article 5 to interests held for private beneficiaries, which was neither argued nor briefed before this court, and whether approval of corporate amendments by the Attorney-General and a Justice of Supreme Court are merely “pro forma” exercises as urged by the majority, would have been appropriate. I would set this case down for reargument to explore the two foregoing premises of the majority, with full participation of the Attorney-General.
Chief Judge Wachtler and Judges Simons and Kaye concur with Judge Meyer; Judge Jasen dissents and votes to order reargument in a separate opinion; Judge Alexander taking no part.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to plaintiffs.

. N-PCL 513, 522 would continue to play an important role in the administration of Type B corporations. Gifts or other transfers to corporations, subsequent to the initial grant under the legislative charter, would be administered in accordance with N-PCL 513, 522.

. In footnote 9 of its opinion, the majority demonstrates a general misapprehension of the arguments set forth in the dissent. N-PCL 103 (c) provides that “[wjhenever the board of a Type B corporation, formed under a special act, reasonably makes an interpretation as to whether a provision of the special act or this chapter prevails, or both apply, such interpretation shall govern unless and until a court determines otherwise” (emphasis added). A fair construction of this provision indicates that a reasonable interpretation will govern unless and until a court determines “otherwise”, to wit: that the interpretation was unreasonable. In view of the approval of the specific amendment at issue by a Justice of the Supreme Court, we are presented with an affirmed finding of fact that the amendment was reasonable, and thus lawful. By reversing the determination of reasonableness by two courts below, the majority holds the Foundation’s actions unreasonable as a matter of law. The majority curiously misreads the legislative history of N-PCL 522. As previously stated (ante, p 475), the Laws of 1978 (ch 690), by which section 522 became law, “ ‘is*** inapplicable to any interests held for private beneficiaries, even though a not-for-profit corporation may be a remainderman.’ ” The majority reformulates this legislative history by asserting “the instant case does not involve an interest ‘held for private beneficiaries’ of which a not-for-profit corporation is a remainderman.” Contrary to the view of the majority, section 522 is inapplicable to any interests held for private beneficiaries, including, but not limited to, interests held for private beneficiaries of which a not-for-profit corporation is a remainderman. Tlie majority’s strained application of section 522 (c) is unauthorized. N-PCL 203 (a) provides that no act of a corporation shall, if duly approved or authorized by a Judge, court or administrative department or agency as required, be deemed ultra vires. As the amendment in question was approved by a Justice of the Supreme Court and the Attorney-General, resort to the doctrine of ultra vires is wholly inappropriate.